QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Bruce E. Van Dalsem (Bar No. 124128)
  brucevandalsem@quinnemanuel.com
  David W. Quinto (Bar No. 106232)
  davidquinto@quinnemanuel.com
865 South Figueroa Street, 10ᵗʰ Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorney for RK NETMEDIA, INC.,
erroneously sued as RK Netmedia and
RealityKings.com

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| WARNER BROS. RECORDS INC., et al., <br><br> Plaintiffs, <br><br> vs. <br><br> RK NETMEDIA, INC., and REALITYKINGS.COM, <br><br> Defendants. | CASE NO. CV 10 4991 CBM (JEMx) <br><br> **MOTION TO TRANSFER VENUE TO THE SOUTHERN DISTRICT OF FLORIDA PURSUANT TO 28 U.S.C. §1404(a)** <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date: December 6, 2010 <br> Time: 10:00 a.m. <br> Judge:  Hon. Consuelo B. Marshall <br> Trial Date:  Not scheduled |

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that at 10:00 a.m. on December 6, 2010, or as soon thereafter as this matter may be heard, in the courtroom of the Honorable Consuelo B. Marshall of the United States District Court for the Central District of California, defendant RK Netmedia, Inc., erroneously sued as RK Netmedia and RealityKings.com, will and hereby does move pursuant to 28 U.S.C. §1404(a) for an order transferring this action to the Southern District of Florida for the following reasons.

First, most of the percipient witnesses, including key third party witnesses, reside in the Southern District of Florida.

Second, the Southern District of Florida is the forum of a related action.

Third, the records of defendant and third party witnesses are located in Florida.   In contrast, it appears that much evidence that plaintiffs intend to rely upon is located outside of California as a substantial majority of the plaintiffs are headquartered in New York.

Fourth, Florida has a greater interest in litigating this dispute than California. Defendant is organized under the laws of Florida.   In contrast, most of the plaintiffs are neither organized under the laws of California nor have their principal place of business here.

Fifth, the majority of the plaintiffs are headquartered in New York, which is presumably where their witnesses and documents are located.

Finally, the Southern District of Florida is much less congested than this district.   Every relevant statistical category, from time to trial to number of civil cases per judge, demonstrates that the parties will be able to try this case much earlier in Florida than in this district.   Similarly, the parties would be able to obtain much earlier rulings on dispositive motions, which may require the Court to view in detail the 193 adult videos at issue.

1       This motion is based on this Notice of Motion, the accompanying

2 Memorandum of Points and Authorities, Declaration of Mike Imber, Declaration of

3 Jose Tavarez, Declaration of Stan Karas, the pleadings and records on file in this

4 action, any other matters of which this Court may take judicial notice, and any

5 further argument as may be present on this motion.

6       This motion is made following the conference of counsel pursuant to Local

7 Rule 7-3, which took place on September 13, 2010 and at times thereafter.

8

9 DATED: October 11, 2010        Respectfully submitted,

10                          QUINN EMANUEL URQUHART &

11                          SULLIVAN, LLP

12

13

14                  By_____

15                     Bruce E. Van Dalsem

                      Attorneys for defendant RK NETMEDIA,

16                     INC., erroneously sued as RK Netmedia,

                      Inc. and REALITYKINGS.COM

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

INTRODUCTORY STATEMENT ..................................................................1

FACTUAL BACKGROUND AND PLAINTIFFS' ALLEGATIONS.....................3

ARGUMENT ............................................................................................6

I.     THE COURT HAS BROAD DISCRETION TO TRANSFER THE
       ACTION TO THE SOUTHERN DISTRICT OF FLORIDA ...........................6

II.    KEY WITNESSES, INCLUDING THIRD PARTY WITNESSES,
       ARE LOCATED IN FLORIDA .....................................................................7

III.   MOST OF THE DOCUMENTARY EVIDENCE IS IN FLORIDA............. 10

IV.    PENDENCY OF A RELATED ACTION WEIGHS IN FAVOR OF
       TRANSFER ................................................................................................ 11

V.     FLORIDA HAS A GREATER INTEREST IN ADJUDICATING
       THIS ACTION THAN CALIFORNIA .......................................................... 14

VI.    PLAINTIFFS' CHOICE OF FORUM IS ENTITLED TO LITTLE
       DEFERENCE ............................................................................................... 14

VII.   THE SOUTHERN DISTRICT OF FLORIDA IS MUCH LESS
       CONGESTED THAN THE CENTRAL DISTRICT OF CALIFORNIA...... 16

CONCLUSION ......................................................................................... 18

-i-

# TABLE OF AUTHORITIES

**Page**

## Cases

*A.J. Indus., Inc. v. U.S. Dist. Court for Central Dist. of Cal.,*
   503 F.2d 384 (9th Cir. 1974) ...................................................................11

*Am. Aircraft Sales Int'l v. Airwarsaw, Inc.,*
   55 F. Supp. 2d 1347 (M.D. Fla. 1999) ....................................................10

*Amazon.com v. Cendant Corp.,*
   404 F. Supp. 2d 1256 (W.D. Wash. 2005) ................................................8

*Boyd v. Snyder,*
   44 F. Supp. 2d 966 (N.D. Ill. 1999) ........................................................15

*Bryant v. ITT Corp.,*
   48 F. Supp. 2d 829 (N.D. Il. 1999) .........................................................15

*Calkins v. Playboy Enterprises Int'l, Inc.,*
   561 F. Supp. 2d 1136 (E.D. Cal. 2008) .....................................................8

*Cardoza v. T-Mobile USA Inc.,*
   2009 WL 723843 (N.D. Cal. 2009) ...........................................................7

*Church of Scientology of California v. United States Dep't of the Army,*
   611 F.2d 738 (9th Cir. 1979) ...................................................................11

*Decker Coal Co. v. Commonwealth Edison Co.,*
   805 F.2d 834 (9th Cir. 1986) .....................................................................7

*Doornbos v. Pilot Travel Centers, LLC,*
   2005 WL 6167730 (S.D.Cal. 2005) ......................................................8, 14

*Ezieme v. Ward Intern. Trading, Inc.,*
   2009 WL 2818394 (C.D. Cal. 2009) ......................................................7, 16

*Fabus Corp. v. Asiana Express Corp.,*
   2001 WL 253185 (N.D. Cal. 2001) ............................................................6

*Fairfax Dental (Ireland) Ltd. v. S.J. Filhol Ltd.,*
   645 F. Supp. 89 (E.D.N.Y. 1986) ............................................................11

*Fodor v. Berglas,*
   1994 WL 822477 (C.D. Cal. 1994).........................................................6, 7

*Heller Financial, Inc. v. v. Midwhey Powder Co., Inc.,*
   883 F.2d 1286 (7th Cir. 1989) .................................................................17

*Herbert Ltd. Partnership v. Electronic Arts Inc.,*
   325 F. Supp. 2d 282 (S.D.N.Y. 2004) .......................................................9

*Hoefer v. U.S. Dept. of Commerce,*
   2000 WL 890862 (N.D. Cal. 2000) ....................................................8

*Impra, Inc. v. Quinton Instruments Co.,*
   17 U.S.P.Q. 2d 1890 (D. Ariz. 1990) ................................................11

*Italian Colors Restaurant v. American Express Company,*
   2003 WL 22682482 (N.D. Cal. 2003) ...............................................10

*Jarvis v. Marietta Corp.,*
   1999 WL 638231 (N.D.Cal. 2009) .............................................14, 16

*Jones v. GNC Franchising, Inc.,*
   211 F.3d 495 (9th Cir. 2000) .............................................................6

*Jumara v. State Farm Ins. Co.,*
   55 F.3d 873 (3d Cir. 1995) ...............................................................17

*LG Electronics, Inc. v. Advance Creative Computer Corp.,*
   131 F. Supp. 2d 804 (E.D.Va.2001) .................................................11

*Lewis v. ACB Business Services, Inc.,*
   135 F.3d 389 (6th Cir. 1998) ............................................................15

*Linear Tech. Corp. v. Analog Devices, Inc.,*
   1995 WL 225672 (N.D. Cal. 1995) ...................................................16

*Lou v. Belzberg,*
   834 F.2d 730 (9th Cir. 1987) ............................................................15

*Moghaddam v. Dunkin Donuts, Inc.,*
   2002 WL 1940724 (S.D. Fla. 2002) ..................................................11

*Olson v. Entre Computer Centers, Inc.,*
   1988 WL 216814 (N.D. Cal. 1988) .....................................................7

*P & S Business Machines, Inc. v. Canon USA, Inc.,*
   331 F.3d 804 (11th Cir. 2003) ..........................................................16

*Parrish v. Nat'l Football League Players, Inc.,*
   2007 WL 1624601 (N.D. Cal. 2007) .................................................16

*Reed v. Fina Oil & Chem. Co.,*
   995 F. Supp. 705 (E.D. Tex. 1998) ...............................................8, 10

*Reiffin v. Microsoft Corp.,*
   104 F. Supp. 2d 48 (D. D.C. 2000) ...................................................15

*Securities Investor Protection Corp. v. Vigman,*
   764 F.2d 1309 (9th Cir. 1985) ..........................................................15

*Sierra Club v. Flowers,*
   276 F. Supp. 2d 62 (D.D.C. 2003) ....................................................15

*Solomon v. Continental American Life Ins. Co.,*
  472 F.2d 1043 (3d Cir. 1973)................................................................17

*Sparling v. Hoffman Constr. Co.,*
  864 F.2d 635 (9th Cir. 1988) ................................................................6

*Steelcase, Inc. v. Haworth, Inc.,*
  1996 WL 806026 (C.D Cal. 1996)........................................................10

*Stonehenge, Ltd. v. Garcia,*
  989 F. Supp. 539 (S.D.N.Y. 1998) ........................................................8

*Supco Auto. Parts, Inc. v. Triangle Auto Spring Co.,*
  538 F. Supp. 1187 (E.D. Pa. 1982) ......................................................11

*Tiffany v. Hometown Buffet, Inc.,*
  2006 WL 2792868 (N.D.Cal. 2006) ......................................................15

*U.S. v. One Oil Painting Entitled "Femme En Blanc" By Pablo Picasso,*
  362 F. Supp. 2d 1175 (C.D. Cal. 2005) ..................................................7

*Van Dusen v. Barrack,*
  376 U.S. 612 (1964)..............................................................................6

*Vitria Technology, Inc. v. Cincinnati Ins. Co.,*
  2005 WL 2431192 (N.D. Cal. 2005) ......................................................8

*Waller v. Burlington Northern R. Co.,*
  650 F. Supp. 988 (N.D. Ill. 1987) ........................................................11

## <u>Statutes</u>

28 U.S.C. §1404(a)................................................... 1, 3, 6, 7, 10, 16

Fed. R. Civ. Proc. 1 ................................................................17

Fed.R.Civ.P. 45(c)(3)(A)(ii)........................................................9

## **Introductory Statement**

This is a copyright infringement action brought by mostly New York-based music recording and publishing companies against a Florida-based adult film company concerning videos that were shot primarily in Florida.[1]   The Central District of California has little, if any, connection to this case, yet plaintiffs chose this forum.   As established herein, this case should be transferred pursuant to 28 U.S.C. § 1404(a) to the Southern District of Florida where the vast majority of witnesses and documents are located, as well as where most of the relevant facts occurred.

Plaintiffs allege that hundreds of adult videos that defendant produced mostly in Florida infringe plaintiffs' copyrighted works, and that the infringement was willful.   Defendant contends that plaintiffs' works were incidentally captured in the films.   Transfer to the Southern District of Florida is warranted under the factors articulated by the Ninth Circuit in evaluating a 1404(a) transfer motion, as follows:

First, most of the percipient witnesses reside in the Southern District of Florida.   All of defendant's principals and employees reside in Florida.   Most of the third party witnesses on the crucial and highly contested issues of fair use, willfulness and damages also live in Florida.   They include the deejays, performers and crew who worked on the allegedly infringing films and who were independent contractors retained by non-party Florida-based companies.   This Court lacks the subpoena power to compel these witnesses to appear for trial in California. Accordingly, the location of the third party witnesses weighs in favor of a transfer to the Southern District of Florida.

Second, the Southern District of Florida is the forum of a related action.   It is where defendant sued its Oklahoma-based insurer for refusing to defend and

---

[1]   Plaintiffs have sued RK Netmedia, Inc. and realitykings.com.   RK Netmedia Inc. operates realitykings.com which is not a separate entity, and therefore, this brief refers to the only proper defendant, RK Netmedia, Inc.

1  indemnify it against the copyright infringement claims at issue here.   The insurer's
2  grounds for denial are based on some of the very same factual and legal issues in
3  this action, including whether defendant's infringement was willful.   Litigating the
4  related suits in two separate fora will waste judicial and party resources and run the
5  real risk of inconsistent judgments.   The two actions will necessitate duplicative
6  discovery and motion practice.   Further, there is no reason to transfer the Florida
7  coverage action to California because the parties and witnesses in that action are not
8  based in California.   Accordingly, the only way to eliminate the waste of resources
9  and the risk of inconsistent judgments is to transfer this action to the Southern
10  District of Florida so that the related actions can litigated before the same judge who
11  could in turn coordinate discovery and motion practice.

12       Third, the records of defendant and third party witnesses are located in
13  Florida.   In contrast, it appears that much evidence that plaintiffs intend to rely
14  upon is located outside of California as a substantial majority of the plaintiffs are
15  headquartered in New York.   Accordingly, the parties will have much easier access
16  to proof in the Southern District of Florida than in this district.

17       Fourth, Florida has a greater interest in litigating this dispute than California.
18  Defendant is organized under the laws of Florida.   The allegedly infringing films
19  were shot primarily in Florida.   In contrast, most of the plaintiffs are neither
20  organized under the laws of California nor have their principal place of business
21  here.   Rather, a majority (23 of 28) have their principal place of business in the East
22  Coast, primarily in New York.

23       Fifth, the majority of the plaintiffs are headquartered in New York, which is
24  presumably where their witnesses and documents are located.   Further, plaintiffs
25  cannot credibly argue that they would be inconvenienced by a transfer of this action
26  to Florida.   Court records show that plaintiffs regularly litigate in the Southern
27  District of Florida.

28

1  Finally, the Southern District of Florida is much less congested than this
2  district.   Every relevant statistical category, from time to trial to number of civil
3  cases per judge, demonstrates that the parties will be able to try this case much
4  earlier in Florida than in this district.   Similarly, the parties would be able to obtain
5  much earlier rulings on dispositive motions, which may require the Court to view in
6  detail the 193 adult videos at issue.

7  For the foregoing reasons, plaintiffs' choice of forum should not outweigh the
8  numerous factors favoring transfer.   Accordingly, pursuant to 28 U.S.C. §1404(a),
9  applicable precedent, and the interests of justice, defendant respectfully requests that
10  this Court transfer this action to the Southern District of Florida.

11  ### Factual Background and Plaintiffs' Allegations

12  <u>The Parties</u>.   Plaintiffs assert copyright infringement claims on behalf of 28
13  record companies and music publishers (collectively, "plaintiffs").   Twenty three of
14  the plaintiffs are not incorporated in California, but are organized under the laws of
15  Delaware, New York, Connecticut or Michigan.   Amended Complaint ¶¶ 9-25.
16  Similarly, 23 plaintiffs have their principal place of business in a state other than
17  California, primarily in New York.   *Id.*

18  Defendant RK Netmedia is a Florida corporation, headquartered in Miami
19  Beach, Florida.   Amended Complaint, ¶ 29.   Its principals and employees all reside
20  in Florida.   Declaration of Jose Tavarez , ¶ 6.   Its business records are all located in
21  Florida.   Tavarez Decl., ¶ 5.

22  <u>Nature of the Action</u>.   Plaintiffs complain that defendant infringed their
23  rights in certain musical compositions and sound recordings (collectively, the
24  "Works") by using the Works in adult films distributed by defendant through its
25  subscription-based websites.   *See, e.g.*, Amended Complaint, ¶ 2.   Plaintiffs allege
26  that defendant used 286 of their sound recordings and musical compositions in 193
27
28

-3-

1  adult content films featured on three sites: "In the VIP," "VIP Crew" and "Papi."
2  *See* Schedules A-F of Amended Complaint.[2]

3     <u>Third Party Witnesses</u>.   Defendant did not shoot any of the allegedly
4  infringing videos.   Tavarez Decl., ¶ 3;   Declaration of Mike Imber, ¶ 3.   The
5  videos were shot by a third party Florida-based corporation called LLL Advertising,
6  Inc.   Tavarez Decl., ¶ 4; Imber Decl., ¶ 3.   LLL Advertising is organized under the
7  laws of Florida, and its offices are located in Miami, Florida.   Imber Decl., ¶ 2.
8  LLL Advertising arranged and supervised the shoots of the videos, and the
9  company's CEO, Mike Imber resides in Fort Lauderdale, Florida.   Imber Decl., ¶ 1.

10     LLL Advertising selected the locations for the videos.   Imber Decl., ¶¶ 3-7.
11  Approximately ninety percent of the "VIP" videos were shot in Miami and Fort
12  Lauderdale, primarily in Florida night clubs.   Imber Decl., ¶¶ 5-6.   All of the
13  "Papi" videos were shot in Florida.   Imber Decl., ¶ 6.

14     LLL Advertising was in charge of hiring the talent and crew for the shoots.
15  Imber Decl., ¶ 3.   The videos that were shot in Florida used Florida-based
16  performers and crew, who were independent contractors retained by LLL
17  Advertising.   Imber Decl., ¶¶ 5-9.   All of the films were shot primarily by two
18  cameramen (Ashley Billington and Antonio Odriozolla), both of whom reside in
19  Florida and who are independent contractors. .  Imber Decl. ¶ 9.

20     When filming took place inside nightclubs, the videos captured music being
21  played in the background by deejays hired by the night clubs.   Imber Decl., ¶ 7.
22  As most of the videos were shot in Florida nightclubs, most of the deejays were
23  based in Florida.   Imber Decl., ¶7.   In videos shot in private residences, LLL
24  Advertising would sometimes hire local Florida deejays.   Imber Decl., ¶ 7.   In

25     [2]   While Plaintiffs have attempted to characterize defendant's videos as "extreme hardcore
26  pornograph[y]" containing "offensive sexual content", such inflammatory labels are beside the
point, and are ironic given that many of plaintiffs' Works (which are primarily "hardcore" rap
27  music) feature lyrics referring to, and glorifying, drug use, criminal activity, prostitution and
misogyny.   This case is not a contest of which party can claim the moral high ground, and any
28  efforts by plaintiffs to make it so should be rejected.

-4-

either case, LLL Advertising did *not* instruct the deejays to play any particular song. Imber Decl., ¶ 7.   The music was never dubbed in, enhanced or edited over the live action.   Tavarez Decl., ¶ 4.   Often the music is difficult to hear.   Imber Decl., ¶ 4. And sometimes when the performers were engaging in sexual activities, there would be no music at all.   Imber Decl., ¶ 4.   Also, the songs were often played in part, as they were "mixed" by the deejays.   Imber Decl., ¶ 4.   The deejays are therefore crucial witnesses who can testify about how they chose certain music (and how neither defendant nor LLL Advertising requested specific songs) and how the shoots occurred.

Plaintiffs have alleged that defendant encouraged their performers to lip-synch the lyrics to plaintiffs' recordings.   Amended Complaint, ¶ 3.   Accordingly, the performers (almost all of whom are based in Florida) are likely to be critical witnesses.   Imber Decl., ¶¶ 5, 6, 8.   Plaintiffs have also alleged that defendant named their videos after plaintiffs' Works.   Amended Complaint, ¶ 3.   The two persons primarily involved in naming the videos are two independent contractors (Molly Moffat and Josh Brown) hired by LLL Advertising, Inc.   Imber Decl., ¶8. Both Ms. Moffat and Mr. Brown reside in Florida.   *Id.*

Related Action.   On July 13, 2010, defendant timely notified its insurer, American Safety Indemnity Company ("ASIC"), of plaintiffs' copyright infringement claims.   Declaration of Stan Karas, Exh. A.   ASIC is an Oklahoma corporation with its principal place of business in Atlanta, Georgia.   Karas Decl., Exh. A (ASIC Complaint, ¶ 3).   Under defendant's insurance policies, ASIC was obligated to defend and indemnify defendant for covered claims.   Karas Decl., Exh. A (ASIC Complaint, ¶ ¶ 7-12).   On July 19, 2010 and August 31, 2010, ASIC denied coverage, claiming *inter alia* that plaintiffs' claims fell within a policy exclusion for the "Knowing Violation of Rights of Another" and that plaintiffs' complaint did not allege any covered injury during the policy period.   Karas Decl., Exh. A (ASIC Complaint, ¶¶ 18-20).   ASIC also refused to participate in an

1   October 10, 2010 mediation between the parties in this action.   Karas Decl., Exh. A

2   (ASIC Complaint, ¶ 23).   Accordingly, on September 9, 2010, defendant filed suit

3   against ASIC in the Southern District of Florida alleging claims for breach of

4   contract, tortious breach of the implied covenant of good faith and fair dealing and

5   declaratory judgment.   Karas Decl., Exh. A.

6   **Argument**

7   I.   THE COURT HAS BROAD DISCRETION TO TRANSFER THE ACTION

8   TO THE SOUTHERN DISTRICT OF FLORIDA

9   28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and

10   witnesses, in the interest of justice, a district court may transfer any civil action to

11   any other district or division where it might have been brought."   The purpose of

12   the statute is to "prevent the waste of time, energy, and money and to protect

13   litigants, witnesses and the public against unnecessary inconvenience and expense."

14   *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).   As the Supreme Court explained,

15   "[s]ection 1404(a) reflects an increased desire to have federal civil suits tried in the

16   federal system at the place called for in the particular case by considerations of

17   convenience and justice," regardless of where they were filed originally.   *Id.* at 616.

18   A motion to transfer the venue of an action lies within the broad discretion of

19   the district court and is to be determined on an individualized, case-by-case basis.

20   *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).   Section

21   1404(a) permits transfers "upon a lesser showing of inconvenience than is required"

22   to establish *forum non conveniens*, although a similar factual analysis is undertaken.

23   *Fabus Corp. v. Asiana Express Corp.*, 2001 WL 253185 at *1 (N.D. Cal. 2001); *see*

24   *also Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 639 (9th Cir. 1988)

25   ("Weighing of factors for and against transfer ... is best left to the discretion of the

26   trial judge") (citation omitted).

27   The threshold question under § 1404(a) is whether the action might have been

28   brought in the transferee court.   *See, e.g., Fodor v. Berglas*, 1994 WL 822477, at *2

1  (C.D. Cal. 1994).   Here, there is no question that this case could have been brought

2  in the Southern District of Florida.   RK Netmedia, Inc. is a Florida corporation, and

3  it is amenable to service there.

4       Beyond the threshold question, this Circuit analyzes both public and private

5  factors.   Private factors include (1) the relative ease of access to sources of proof;

6  (2) availability of compulsory process for attendance of the unwilling, and the cost

7  of obtaining attendance of willing witnesses, and (3) all other practical problems

8  that make trial of a case easy, expeditious and inexpensive.   *Decker Coal Co. v.*

9  *Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).   Public factors

10  include (1) the administrative difficulties flowing from court congestion; (2) the

11  local interest in having localized controversies decided at home; (3) the unfairness

12  of burdening citizens in an unrelated forum with jury duty and (4) the interests of

13  justice.   *Id.*   As shown below, both private and public factors weigh in favor of a

14  transfer of this action to the Southern District of Florida.

15  II.    <u>KEY WITNESSES, INCLUDING THIRD PARTY WITNESSES, ARE</u>

16        <u>LOCATED IN FLORIDA</u>

17       Courts in the Ninth Circuit uniformly hold that the convenience of the

18  witnesses is the most important factor in deciding whether a case should be

19  transferred pursuant to 28 U.S.C. § 1404(a).   *See, e.g., Ezieme v. Ward Intern.*

20  *Trading, Inc.,* 2009 WL 2818394, *3 (C.D. Cal. 2009) (the convenience of the

21  witnesses is what "courts often recognize as the most important factor in ruling on a

22  motion to transfer under 28 U.S.C. § 1404(a)"); *accord Cardoza v. T-Mobile USA*

23  *Inc.*, 2009 WL 723843, *4 (N.D. Cal. 2009); *Olson v. Entre Computer Centers, Inc.*,

24  1988 WL 216814, *6 (N.D. Cal. 1988); *U.S. v. One Oil Painting Entitled "Femme*

25  *En Blanc" By Pablo Picasso*, 362 F.Supp.2d 1175, 1185 (C.D. Cal. 2005).

26       Location of non-party witnesses is especially important because absent

27  transfer the parties may not be able to secure the attendance of these witnesses at

28  trial.   *Fodor*, 1994 WL 822477, at *5 ("The availability of compulsory process is

1  another factor to be considered by the Court."); *Reed v. Fina Oil & Chem. Co.,* 995

2  F. Supp. 705, 714 (E.D. Tex. 1998); *Stonehenge, Ltd. v. Garcia,* 989 F. Supp. 539,

3  541 (S.D.N.Y. 1998).

4      District courts in the Ninth Circuit have routinely transferred cases where, as

5  here, key witnesses are located in another jurisdiction.  *See Doornbos v. Pilot*

6  *Travel Centers, LLC,* 2005 WL 6167730, *3-4 (S.D.Cal. 2005) (granting motion to

7  transfer on grounds of convenience in action where defendant showed that a

8  considerable number of material witnesses were located in the transferee venue);

9  *Vitria Technology, Inc. v. Cincinnati Ins. Co.,* 2005 WL 2431192, *4 (N.D. Cal.

10  2005) (granting motion to transfer where the majority of key witnesses all lived in

11  the transferee state); *Hoefer v. U.S. Dept. of Commerce,* 2000 WL 890862, *2 (N.D.

12  Cal. 2000) (granting motion to transfer on grounds of convenience where

13  defendants' headquarters were in Washington and "crucial witnesses" were located

14  there); *Amazon.com v. Cendant Corp.*, 404 F.Supp.2d 1256, 1260-61 (W.D. Wash.

15  2005) (granting motion to transfer on grounds of convenience because the majority

16  of defendant's witnesses were located in the transferee state).

17      The principal issues in this case are (1) whether defendant is entitled to the

18  fair use defense either as to liability or as a factor in determining damages and (2)

19  whether defendant's infringement is willful.   In determining fair use, the court

20  considers, among other things, whether the defendant exploited the copyright for

21  commercial gain or whether its use was merely incidental.   *Calkins v. Playboy*

22  *Enterprises Int'l, Inc.*, 561 F. Supp. 2d 1136, 1141-42 (E.D. Cal. 2008).   In cases

23  where the copyrighted work was merely part of the background or was incidentally

24  captured, courts have held there was no infringement.   *Id.*

25      Here, third party witnesses will be crucial in establishing that defendant's use

26  was incidental and not willful.   Third party witnesses involved in making the films

27  will have crucial information as to (1) whether the deejays hired by the clubs

28  independently selected what songs to play; (2) whether the performers in the videos

1  were instructed or encouraged to sing along with the background music, and (3)

2  whether the films were otherwise designed around the music.   These third party

3  witnesses are not employed by defendant.   Some are employees of LLL Advertising

4  or are independent contractors that were retained by the company.   Still others --

5  deejays hired by the nightclubs -- were never even retained by LLL Advertising, and

6  the company would have absolutely no control over them.

7      These third party witnesses will be crucial in establishing that defendant's

8  infringement was not willful.   Other key witnesses on willfulness will be

9  defendant's own principals and employees, all of whom reside in Florida.   Tavarez

10  Decl., ¶ 6.

11      The known third party witnesses include:

12  •    Mike Imber, owner and Chief Executive Officer of LLL Advertising,
13       who arranged and supervised the shoots of the allegedly infringing
        videos and who resides in Fort Lauderdale, Florida;
14
15  •    Ashley Billington, the cameraman on the challenged productions, who
        resides in Boca Raton, Florida;
16
17  •    Antonio Odriozolla, another cameraman on the challenged productions,
        who lives in Miami, Florida;
18
19  •    Don Bernadine, who helps with casting and shooting of the "VIP"
        series and resides in Fort Lauderdale, Florida;
20
21  •    Justin Lally, who worked behind the scenes at certain shoots for the
        "VIP" films and whose last known address is in Miami, Florida;
22
23  •    Pabolo Rivera, who produced most of the content for the "Papi" videos,
        and whose last known address is in Miami, Florida;
24
25  •    Molly Moffat, a performer who was also responsible for naming the
        challenged films, and who resides in Coral Springs, Florida;
26
    •    Josh Brown, a performer and key grip who was also involved in
27       naming the challenged films and who resides in Boca Raton, Florida.[3]

28  _____
    [3]   Imber Decl., ¶¶ 1, 8-9.

1   This Court does not have the power to compel these key third party witness to

2   attend a trial in this district.   Accordingly, the trier of fact can hear these witnesses'

3   live testimony only if the case is transferred to the Southern District of Florida,

4   which is where these witnesses reside.   Even assuming non-party witnesses could

5   be persuaded to attend the trial voluntarily, it would be more convenient and cost-

6   efficient for them to appear in their home state of Florida than nearly 3,000 miles

7   away, in this district.   *See Reed*, 995 F. Supp. at 715 ("[I]t is a logical inference that

8   it would be cheaper for the parties to secure the testimony of those witnesses, even if

9   willing, if the case was heard closer to their residences.").   Thus, the indisputable

10   fact that key third party witnesses reside in Florida, and that this Court does not have

11   the ability to compel them to appear for trial, weighs heavily in favor of transfer.

12   **III.   MOST OF THE DOCUMENTARY EVIDENCE IS IN FLORIDA**

13   The location of documentary evidence is an "important consideration" in the

14   court's transfer analysis.   *Italian Colors Restaurant v. American Express Company*,

15   2003 WL 22682482 (N.D. Cal. 2003) (granting motion to transfer venue to district

16   where defendant's principal place of business was located because "the cost of

17   litigation will be substantially lessened if the action is venued in the same district

18   where most of the documentary evidence is found."); *accord Am. Aircraft Sales Int'l*

19   *v. Airwarsaw, Inc.*, 55 F. Supp. 2d 1347, 1353 (M.D. Fla. 1999).   Courts routinely

20   transfer cases to the forum where most of the documentary evidence is located.

21   *See, e.g.*, *Steelcase, Inc. v. Haworth, Inc.*, 1996 WL 806026, *2 (C.D Cal. 1996)

22   (factor considered by courts in deciding whether to transfer a case under § 1404(a) is

23   the "relative ease of access to proof and this factor favors transfer where the

24   majority of documentary evidence is located at corporate headquarters in the

25   alternate forum"); *Moghaddam v. Dunkin Donuts, Inc.*, 2002 WL 1940724, *4 (S.D.

26   Fla. 2002) ("Because the bulk of the relevant documents are located in [the

27   transferee court], the Court finds that this factor clearly weighs in favor of

28   transfer.").

1    Here, access to records and documents is more available to the Southern
2   District of Florida than to this District.   Defendant's business records, including the
3   general ledger, accounting records, intra-corporate communications, and contracts
4   with third parties, are located in its offices in Miami Beach, Florida.   Tavarez Decl.,
5   ¶ 5.   Similarly, all potentially relevant records maintained by third parties are
6   located in Florida.   All of LLL Advertising's business records are located in
7   Florida.   Imber Decl., ¶ 10.   Similarly, much of defendant's financial information –
8   which plaintiffs claim is relevant to their damages claims – is maintained by a third
9   party accountant, who is also located in Florida.   Tavarez Decl., ¶ 5.   By contrast,
10   plaintiffs' evidence is comprised primarily of the Works' copyright registrations and
11   digital copies of the Works themselves.   As most of the plaintiffs are headquartered
12   in New York, New York is presumably where this evidence is located, and it is
13   easier and cheaper to have these records shipped from New York to Florida than
14   from New York to this district.

15   IV.   PENDENCY OF A RELATED ACTION WEIGHS IN FAVOR OF
16        TRANSFER

17       Judicial efficiency, as well as fairness to the party litigating in both actions,
18   mandates that cases involving similar factual issues be litigated in the same district.
19   The court may transfer an action involving the same issues to "avoid placing an
20   unnecessary burden on the federal judiciary, and to avoid the embarrassment of
21   conflicting judgments."   *See Church of Scientology of California v. United States*
22   *Dep't of the Army*, 611 F.2d 738, 750 (9th Cir. 1979).   "[T]he pendency of an
23   action in another district is important because of the positive effects it might have in
24   possible consolidation of discovery and convenience to witnesses and parties."   *A.J.*
25   *Indus., Inc. v. U.S. Dist. Court for Central Dist. of Cal.*, 503 F.2d 384, 389 (9th Cir.
26   1974) (internal citation omitted); *see also Supco Auto. Parts, Inc. v. Triangle Auto*
27   *Spring Co.*, 538 F. Supp. 1187, 1192 (E.D. Pa. 1982) (the existence of a related case
28   in another district is a "powerful reason to grant a motion for a change of venue");

*Fairfax Dental (Ireland) Ltd. v. S.J. Filhol Ltd.*, 645 F.Supp. 89, 92 (E.D.N.Y. 1986) (same).

As one court explained:

> "The interest of justice weighs heavily in favor of transfer when related actions are pending in the transferee forum. This is particularly so when the "two cases are intimately related and 'hinge upon the same factual nucleus." ' Pendency of such a related action in the transferee forum weighs in favor of transfer, "not only because litigation of related claims in the same tribunal facilitates efficient, economical and expeditious pre-trial proceedings and discovery, but because it avoids ... [duplicative] litigation and inconsistent results."   And where a party has previously litigated a case involving similar issues and facts "a court in that district will likely be familiar with the facts of the case.   As a matter of judicial economy, such familiarity is highly desirable."

*LG Electronics, Inc. v. Advance Creative Computer Corp.*, 131 F.Supp.2d 804, 815 (E.D.Va.2001) (citations omitted).   In fact, the interest is so strong that "[a]s a general rule, cases should be transferred to districts where related actions are pending." *Impra, Inc. v. Quinton Instruments Co.*, 17 U.S.P.Q.2d 1890, 1892 (D. Ariz. 1990); *Waller v. Burlington Northern R. Co.*, 650 F.Supp. 988, 991 (N.D. Ill. 1987).

Here, defendant is currently litigating in the Southern District of Florida a coverage action against its Oklahoma-based insurer pertaining to plaintiffs' claims in this litigation.   Karas Decl., Exh. A.   The actions are based on the same factual nucleus – namely defendant's purported infringement of plaintiffs' Works.   The actions involve some of the same factual and legal issues:   Defendant's insurer, ASIC, has denied coverage on the ground that plaintiffs' claims of willful copyright infringement fall under the "intentional act" exclusion of the policy.   Karas Decl., Exh A (ASIC Complaint, ¶ 18).   Plaintiffs in this litigation have also put defendant's scienter at issue by alleging that defendant's infringement was willful and intentional.   *See*, *e.g.*, Amended Complaint, ¶ 42.   Accordingly, there will be duplicative discovery and motion practice on the issue of willfulness.   There is also

1  the risk that one court may conclude that defendant's infringement is willful, while
2  another reaches a contrary finding.

3         Another issue in the coverage action is when defendant created and/or
4  published the accused works, and whether it had insurance coverage during this
5  time.   Karas Decl., Exh A (ASIC Complaint, ¶ 21).   Similarly, there will be
6  discovery and briefing regarding the dates of the videos' publication in this action
7  because it is relevant to both defendant's statute of limitations defense and the scope
8  of permissible damages that may be available to plaintiffs.   Thus, unless this action
9  is transferred to Florida where discovery and motion practice can be coordinated by
10 the same judge, defendant would be required to respond to substantially identical
11 discovery and submit to duplicative depositions regarding the history of the accused
12 works' creation.

13        Further, ASIC has questioned whether defendant used plaintiffs' musical
14 works in their advertising and whether such use triggers the policy's coverage of
15 "advertising injury liability."   Karas Decl., Exh A (ASIC Complaint, ¶ 18).   In this
16 action, plaintiffs allege that defendant used plaintiffs' musical works in the
17 advertising of its works.   Amended Complaint, ¶ 42.   Accordingly, both actions
18 will involve discovery and possible motion practice relating to whether defendant
19 used plaintiffs' Works in advertising its websites.

20        It makes no sense to litigate these identical issues simultaneously in two
21 separate fora.   Further, transfer of the Florida action to California makes no sense
22 when the key witnesses in the Florida action reside in Florida; the plaintiff in that
23 action (RK Netmedia) is based in Florida, and the defendant in that action (ASIC) is
24 not based in California.   Accordingly, the only way to avoid a waste of judicial
25 resources and the risk of inconsistent judgments is to transfer this action to the

26
27
28

-13-

1  Southern District of Florida so that the same judge may consolidate discovery and

2  motion practice.[4]

3  V.  FLORIDA HAS A GREATER INTEREST IN ADJUDICATING THIS

4       ACTION THAN CALIFORNIA

5       The "local interest in having local controversies decided at home" is another

6  important consideration in the transfer analysis.  *Jarvis v. Marietta Corp.*, 1999 WL

7  638231, at *7 (N.D.Cal. 2009).  Florida "clearly has an interest in its corporations

8  and the activities they undertake."  *Id.*  This case involves claims of willful

9  copyright infringement against a company that is organized under the laws of

10  Florida, was founded by residents of Florida, and employs primarily Florida

11  residents.  Further, as explained above, the allegedly infringing videos were

12  produced predominantly in Florida, using local performers and behind-the-scenes

13  talent. Accordingly, Florida has a substantial interest in adjudicating this dispute.

14  In contrast, although some of the plaintiffs reside in California, the majority of them

15  (23 of 28) have their principal place of business elsewhere, primarily in New York.

16  As between Florida and California, therefore, Florida has a greater interest in

17  litigating the dispute.  *Cf. Doornbos v. Pilot Travel Centers, LLC,* 2005 WL

18  6167730, *6 (S.D.Cal. 2005) (finding that the transferee state where defendants'

19  corporate headquarters were located had a "substantial interest" in the outcome of

20  the action).

21  VI.  PLAINTIFFS' CHOICE OF FORUM IS ENTITLED TO LITTLE

22       DEFERENCE

23       Plaintiffs may argue that their choice of venue is entitled to deference.  The

24  rule in the Ninth Circuit is that "[i]f the operative facts have not occurred within the

25

26  [4]  Plaintiffs may argue that the defendant strategically chose Florida as the forum for the
insurance coverage action to support the instant transfer motion.  Such a claim would be

27  unfounded.  The applicable policy was issued in Florida to a Florida insured and is likely
governed by Florida law.  The coverage action is properly venued in Florida and it is not even

28  clear to defendant that it could have obtained personal jurisdiction over ASIC in California.

1  forum and the forum has no interest in the parties or subject matter, [plaintiffs']
2  choice is entitled to only minimal consideration." *Lou v. Belzberg*, 834 F.2d 730,
3  739 (9th Cir. 1987); *see also Tiffany v. Hometown Buffet, Inc.*, 2006 WL 2792868
4  (N.D.Cal. 2006) ("[A] plaintiffs choice of forum is entitled to only minimal
5  consideration when the forum of original selection has no particular interest in the
6  parties or subject matter") (internal quotation and citation omitted); *Boyd v. Snyder*,
7  44 F. Supp. 2d 966, 970 (N.D. Ill. 1999) ("When the conduct and events giving rise
8  to the cause of action did not take place in the plaintiff's selected forum, the
9  plaintiffs preference has minimal value even if it is his home forum.") (quotations
10  and citations omitted); *Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 67 (D.D.C.
11  2003) ("When the connection between the controversy, the plaintiff, and the chosen
12  forum is attenuated, the court pays less deference to plaintiffs' choice of forum.").

13       Here, as explained above, few of the relevant events occurred in California.
14  Most of the videos were shot in Florida.   Further, most of the key party and
15  nonparty witnesses do not reside in California; they reside in Florida.   Tavarez
16  Decl., ¶ 6; Imber Decl., ¶¶ 7-9.   The records of defendant and third party witnesses
17  are in Florida, not California.   Tavarez Decl., ¶ 5; Imber Decl., ¶ 10.   To the extent
18  plaintiffs' records are relevant, most are headquartered in New York, where their
19  documents and witnesses are presumably located.

20       In any event, plaintiff's choice of venue is not afforded much weight where
21  the plaintiff commenced the action in a forum that is not its residence.   *See*
22  *Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir.
23  1985); *Bryant v. ITT Corp.*, 48 F.Supp.2d 829, 832 (N.D. Il. 1999); *Lewis v. ACB*
24  *Business Services, Inc.*, 135 F.3d 389, 413 (6th Cir. 1998); *see also Reiffin v.*
25  *Microsoft Corp.*, 104 F.Supp.2d 48, 54, n. 12 (D. D.C. 2000) (stating that a plaintiffs
26  chosen forum is accorded little deference where it is apparent that the plaintiff is
27  engaged in "forum shopping" and is offered an equally convenient forum
28

1  elsewhere).   Here, 23 of the 28 plaintiffs are headquartered elsewhere, primarily in

2  New York.   Amended Complaint, ¶¶ 9-25.

3       Importantly, plaintiffs cannot argue that they would be inconvenienced by

4  litigating this case in the Southern District of Florida.   Plaintiffs are frequent

5  litigants in the Southern District of Florida and routinely elect to bring cases there.

6  For instance, court records demonstrate that plaintiff Warner Brothers Records has

7  litigated at least 11 actions in the Southern District of Florida.   Karas Decl., Exh. D.

8  Plaintiff Electra Entertainment Group has litigated at least 39 cases there.   Karas

9  Decl., Exh. E.   At least 18 of those cases were initiated by Warner Brothers and

10 Elektra Entertainment as plaintiffs in the Southern District of Florida.   *Id.*   Under

11 these circumstances, plaintiffs' choice to file this action in this district should not be

12 entitled to deference.

13 VII.   <u>THE SOUTHERN DISTRICT OF FLORIDA IS MUCH LESS</u>

14      <u>CONGESTED THAN THE CENTRAL DISTRICT OF CALIFORNIA</u>

15      Courts in the Ninth Circuit regularly consider the relative docket congestion

16 of the transferee district and the forum district when considering whether to grant a

17 motion to transfer pursuant to 28 U.S.C. § 1404(a).   *See, e.g.*, *Ezieme*, 2009 WL

18 2818394, at *11 (considering filings per judge, cases over 3 years old and time

19 between filing-to-trial); *Parrish v. Nat'l Football League Players, Inc.*, 2007 WL

20 1624601, at *8 (N.D. Cal. 2007) (noting length of time between filing and trial);

21 *Jarvis*, 1999 WL 638231, at *7 (comparing time to trial); *Linear Tech. Corp. v.*

22 *Analog Devices, Inc.*, 1995 WL 225672, at *3 (N.D. Cal. 1995) (comparing median

23 time to trial).[5]

24

25 ------

   [5]   Courts outside the Ninth Circuit are in accord.   *See, e.g.*, *P & S Business Machines, Inc. v.*

26 *Canon USA, Inc.*, 331 F.3d 804, 808 (11th Cir. 2003) ("docket congestion, if proven, may be an
   appropriate consideration in a § 1404 motion to transfer"); *Heller Financial, Inc. v. v. Midwhey*

27 *Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989) ("interest of justice" includes the concerns
   of ensuring speedy trials); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995) (interest

28 of justice analysis requires a consideration of differences in docket congestion between the two

As the table below demonstrates, the Southern District of Florida has a far less congested docket than this district:

|  | Central District of California | Southern District of Florida |
|---|---|---|
| Percentage of civil cases over 3 years old | 7.6 | 1.6 |
| Median amount of time from filing of a civil case to trial | 19 months | 15.7 months |
| Number of pending cases | 12,303 | 5,707 |
| Pending cases per judge | 439 | 317 |

Karas Decl., Exhs. B and C.

In sum, in every important metric, the Southern District of Florida is substantially less congested than this District.   Accordingly, this case is virtually certain to be tried to judgment much earlier if the Court transfers the action. Further, because judges in the Southern District of Florida have lighter dockets than this Court, the parties are much more likely to obtain faster rulings on dispositive and other motions in Florida, thus ensuring that the parties obtain " just, speedy, and inexpensive determination" of this action.   *Fed. R. Civ. Proc.* 1.   Considerations of congestion are particularly significant in this factually complex case because a determination of defendant's fair use defense will require viewing in detail the 193 videos put at issue in plaintiffs' Amended Complaint to determine whether the videos in fact copy plaintiffs' Works and how plaintiffs' alleged Works were used in each video.   In addition, plaintiffs must prove ownership and registration as to each of the 286 copyrighted works they claim were purportedly copied in defendant's 193 videos.   Based on defendant's preliminary investigation, many of the Works have

districts); *Solomon v. Continental American Life Ins. Co.*, 472 F.2d 1043, 1047 (3d Cir. 1973) (same).

-17-

1  not been registered or were registered in an untimely fashion which will prevent

2  plaintiffs from recovering statutory damages as to those Works.   In sum, this is a

3  time consuming case that is best litigated in a forum that is far less congested than

4  this District.

5                                    **Conclusion**

6          For the foregoing reasons, defendant respectfully requests the Court to

7  transfer this action to the Southern District of Florida.

8  DATED: October 11, 2010          Respectfully submitted,

9                                   QUINN EMANUEL URQUHART &

10                                  SULLIVAN, LLP

11

12

13  By _____

14          Bruce E. Van Dalsem
            Attorneys for defendant RK NETMEDIA,
15          INC., erroneously sued as RK Netmedia,
            Inc. and REALITYKINGS.COM
16

17

18

19

20

21

22

23

24

25

26

27

28